# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DARRELL K. HAZE,

                Plaintiff,

v.

TIERANIE MARCHANT,

                Defendant.

Case No. 13-CV-1448-JPS

ORDER

      This matter comes before the Court on a motion for partial summary judgment filed by the plaintiff, Darrell K. Haze. (Docket #32). The case was originally assigned to this Court, but then proceeded before Magistrate Judge William Callahan after the parties consented to jurisdiction before him. (Docket #8). When Magistrate Judge Callahan relinquished his cases in anticipation of retirement, the matter was assigned back to this Court for disposition with the motion for summary judgment pending. (*See* Docket #32, #42, #43).

      After amending his complaint several times, Mr. Haze now asserts three separate claims against the defendant, Tieranie Marchant, a police officer employed by the City of West Allis, Wisconsin. (Docket #21, ¶¶ 39–68). All three claims arise under 42 U.S.C. § 1983; in them, Mr. Haze asserts that Officer Marchant violated his Fourth, Fifth, and Fourteenth Amendment rights. (Docket #21, ¶¶ 39–68).

      Mr. Haze now seeks summary judgment in his favor in three respects. First, Mr. Haze requests that the Court determine that Officer Marchant did not have probable cause to arrest Mr. Haze. (Docket #34 at 3–4). Second, Mr. Haze requests that the Court determine that Officer Marchant violated his Fourth Amendment right to equal protection of the law. (Docket #34 at 5–6).

Third, Mr. Haze requests that the Court decide that Officer Marchant is not entitled to qualified immunity. (Docket #34 at 6–7).

The matter is fully briefed (Docket #34, #35, #46), and the Court will now decide it.

1.   SUMMARY JUDGMENT STANDARD

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law. The party pursuing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a), (c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978–79 (7th Cir. 1996)). In reviewing a motion for summary judgment, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013)).

Where "the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71*, 778 F.3d at 601 (citing *Reserve Supply Corp. v. Owens–Corning Fiberglass Corp.*, 971 F.2d 37, 42 (7th Cir. 1992); *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71*, 778

F.3d at 601–02 (citing *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011) ("A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance."); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (even an unanswered motion for summary judgment cannot be granted unless the movant has shown that the facts warrant judgment in its favor)).

2. BACKGROUND

On the evening of August 8, 2013, while the Wisconsin State Fair was taking place, Mr. Haze was near Wisconsin State Fair Park in West Allis, Wisconsin. (PPFF ¶ 2; DPFF ¶ 2).[1] He was on the street listening to a violin player when a male police officer approached him. (PPFF ¶¶ 2–3). The male police officer asked Mr. Haze what he was doing, and Mr. Haze responded that he was simply listening to the violin player. (PPFF ¶¶ 3–4). The male officer then walked away. (PPFF ¶ 5).

Shortly thereafter, at about 7:30 p.m., Officer Marchant responded to a report received from the West Allis Police Department of a black man attempting to sell people tickets. (DPFF ¶ 1). She reported to 7909 West Greenfield Avenue, which is just outside of Wisconsin State Fair Park and spoke with Anthony G. Breitrick, who was managing a parking lot at a store nearby. (DPFF ¶¶ 1, 4–5). Mr. Breitrick reported the following information to Officer Marchant:

---

[1]The Court will refer to Mr. Haze's proposed findings as "PPFF," and to Ms. Marchant's as "DPFF." Unless otherwise noted, the cited proposed findings are undisputed.

(1) that Mr. Breitrick had seen Mr. Haze at the corner of South 78th Street and West Greenfield Avenue attempting to sell Wisconsin State Fair tickets for $10.00. (DPFF ¶¶ 6–7);

(2) that Mr. Breitrick had seen another individual approach Mr. Haze, after which Mr. Haze became upset and told the other individual that he needed to go somewhere else to sell tickets (DPFF ¶¶ 8–9); and

(3) that Mr. Breitrick decided to call the police when Mr. Haze began to talk to Mr. Breitrick's son, who was playing violin on West Greenfield Avenue (DPFF ¶ 10).[2]

With that information, Officer Marchant approached Mr. Haze. (PPFF ¶ 6; DPFF ¶ 11). At this point, the parties' version of events diverge. Mr. Haze asserts that Officer Marchant immediately began to search his pockets and fanny pack without asking him what he was doing. (PPFF ¶ 6; Haze Resp. to DPFF ¶¶ 13–15, 18, 20–23). On the other hand, Officer Marchant asserts that she had a conversation with Mr. Haze first, asking him what he was doing and telling him that she had arrested him for selling tickets the previous year; to this, Mr. Haze allegedly told her "C'mon Officer Marchant

---

[2] Mr. Haze attacks these proposed findings as being based upon hearsay, which would, of course, make them inadmissible and therefore inappropriate for consideration at summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). But the statements are not actually hearsay. A statement is hearsay only when offered "to prove the truth of the matter asserted in the statement." Fed. R. Ev. 801(c)(2). So, for what purpose is Officer Marchant offering the statement? "The determination of whether an arresting officer has probable cause to arrest an alleged offender turns on whether a reasonable person in the officer's position would have probable cause to believe than an offense has been committed." *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). "Therefore, the inquiry 'depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief.'" *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301 (7th Cir. 2011) (quoting *Woods*, 234 F.3d at 987). That is precisely what Officer Marchant is offering the statements for, here: not for their truth, "but to show the basis for [her] decision to arrest" Mr. Haze. *Sow*, 636 F.3d at 301. As such, the statements are not hearsay. *Id.*

you know what I do and what my game is." (DPFF ¶¶ 13–18). But, whether or not Officer Marchant had a conversation with Mr. Haze before searching him, it is clear that upon searching him she found a number of Wisconsin State Fair tickets. (PPFF ¶ 7; DPFF ¶ 19).

After finding the tickets, Officer Marchant may have asked Mr. Haze a number of questions (*see* Haze Resp. to DPFF ¶¶ 20–23 (disagreeing with Officer Marchant's contention that she asked Mr. Haze a number of questions)), but quickly made it clear that selling tickets was illegal and that she planned to arrest him (PPFF ¶ 8; DPFF ¶¶ 18, 25–26). However, the parties disagree over precisely what Officer Marchant said and did. Mr. Haze asserts that Officer Marchant said very little, simply patting him down, handcuffing him, placing him in her squad car, and taking him to the West Allis police station for holding, without explaining the basis for his arrest. (PPFF ¶¶ 9–13; Haze Resp. to DPFF ¶¶ 23, 25–27). On the other hand, Officer Marchant asserts that she explained that she was arresting Mr. Haze for violating City of West Allis Ordinance 9.18(7)(t), prohibiting the sale of Wisconsin State Fair tickets for more than they are worth. (DPFF ¶¶ 25–26).

In any event, Officer Marchant did, in fact, arrest Mr. Haze and take Mr. Haze to the City of West Allis police station. (PPFF ¶¶ 10–12). The parties also dispute what happened after Mr. Haze arrived at the police station. Mr. Haze asserts that Officer Marchant placed him in a holding cell and interrogated him. (PPFF ¶¶ 13–15). Mr. Haze alleges that, during this time, he complained that Officer Marchant was harassing him. (PPFF ¶ 16–17). He also states that Officer Marchant took him out of the cell several times for reasons including finger-printing. (*See, e.g.*, PPFF ¶¶ 22–27). Mr. Haze asserts that, at one point, Officer Marchant tried to coerce him into signing a document admitting to theft. (PPFF ¶ 25). Officer Marchant's version of the

story differs in all material respects: she does not remember placing Mr. Haze in a cell (Marchant Resp. to PPFF ¶¶ 14–15) and asserts that—while she did interview him—the interview was short, Mr. Haze was not in a holding cell, Mr. Haze never complained of harassment or other misconduct, and she never attempted to coerce Mr. Haze into signing a document admitting to theft. (Marchant Resp. to PPFF ¶¶ 16, 25).

Eventually, Mr. Haze was released, at which time Officer Marchant issued him a citation. The citation charged Mr. Haze with violating West Allis Ordinance 943.20(1), which corresponds with a charge of theft. (PPFF ¶ 28). This, of course, is not the ticket-sales charge, West Allis Ordinance 9.18(7)(t), on which Officer Marchant alleges that she arrested Mr. Haze. But Officer Marchant offers an explanation for that: she asserts that the West Allis Police Department's computer system for issuing citations did not have a violation corresponding to the ticket sales charge. (Marchant Resp. to PPFF ¶ 25; DPFF ¶¶ 34–35). Thus, Officer Marchant asserts that she was unable to issue Mr. Haze a citation for the ticket sales charge; so, at the suggestion of her supervisor, she issued the theft citation, because it carried the same forfeiture amount ($681.00). (Marchant Resp. to PPFF ¶ 25; DPFF ¶¶ 36–37). Officer Marchant's explanation is consistent with the actions she took thereafter: on August 11, 2013, she completed an incident report, listing the ticket-sales charge as the violation for which she arrested Mr. Haze (DPFF ¶¶ 28–29); on August 19, 2013, she issued a separate citation to Mr. Haze, listing the ticket-sale charge (DPFF ¶ 43); thereafter, she requested that the theft citation be voided or dismissed, which it was (DPFF ¶ 44). And, the City of West Allis Municipal Court also dismissed the corrected ticket-sale citation. (PPFF ¶ 32).

Officer Marchant asserts that, in addition to trying to correct the record by reporting the correct charge in the arrest report and reissuing the

citation, she also tried to explain to Mr. Haze the reasons for the original incorrect citation. (DPFF ¶¶ 38–40). But, she alleges, when she tried to explain that the police department's computer system would not allow her to issue a citation with the correct ticket-sale charge, Mr. Haze became combative and would not listen to her. (DPFF ¶ 38–40). Mr. Haze disagrees, stating that Officer Marchant tried to coerce him into confessing to theft. (Haze Resp. to DPFF ¶¶ 38–40).

Mr. Haze theorizes that Officer Marchant did so in an effort to punish him for alleging misconduct against her during a prior arrest in 2012. (PPFF ¶ 19). Indeed, it appears that in 2012, Officer Marchant arrested Mr. Haze in practically identical circumstances, arresting Mr. Haze for illegal ticket sales, but issuing a citation for theft (which the Milwaukee County Circuit Court ultimately dismissed). (*See, e.g.*, PPFF ¶¶ 19–20; DPFF ¶ 12; Haze Resp. to DPFF ¶ 12; Docket #30 ¶¶ 34–41). Mr. Haze asserts that, as a result of this 2012 arrest, he complained about Officer Marchant's conduct. (PPFF ¶ 19). Officer Marchant disagrees, pointing out that there are no records of a misconduct complaint and that, even if Mr. Haze had complained, Officer Marchant was never notified of his complaint. (*See, e.g.*, Marchant Resp. to PPFF ¶ 19; DPFF ¶¶ 51–55).

3. ANALYSIS

Mr. Haze has moved for summary judgment on three aspects of this action. First, he asks the Court to hold that Officer Marchant lacked probable cause to arrest him. (Docket #34 at 3–5; Docket #46 at 4–6). Second, he asks the Court to determine that Officer Marchant violated the Equal Protection Clause. (Docket #34 at 5–6; Docket #46 at 3–4). Third, he asks the Court to find that Officer Marchant is not entitled to qualified immunity. (Docket #34 at 6–7). He is not entitled to summary judgment as to any aspect of the case.

### 3.1 Probable Cause

Disputes of material fact preclude summary judgment on the issue of whether Officer Marchant had probable cause to arrest Mr. Haze. The parties largely dispute the run-up to the arrest.

Mr. Haze alleges that he was doing nothing other than standing on a street corner when Officer Marchant arrived and arrested him practically immediately. Indeed, if that were the case, it would be very hard to see how Officer Marchant had probable cause to arrest Mr. Haze for any crime—whether it be for theft by fraud or illegal ticket sales.[3]

Meanwhile, Officer Marchant has alleged that her probable cause derived from the statement of an on-scene witness—Mr. Breitrick—who told her that Mr. Haze had been selling tickets on the corner. If, indeed, that were true, then Officer Marchant likely had probable cause to arrest Mr. Haze for illegal ticket sales. And, contrary to Mr. Haze's contention, the statements of Mr. Breitrick are not inadmissible hearsay. *See, e.g.*, *Sow v. Fortville Police Dep't*, 636 F.3d at 301 (quoting Woods, 234 F.3d at 987). Nonetheless, the Court has reservations about crediting Officer Marchant's affidavit in full; from the affidavit, it is unclear how Mr. Breitrick identified Mr. Haze to Officer Marchant. (*See* Docket #38 ¶¶ 8–10). Taking the affidavit at face value,

---

[3]On this point, the Court notes that Mr. Haze's arguments have shifted. Originally, he sought a determination that Officer Marchant lacked probable cause to arrest him for theft by fraud. (Docket #34 at 3–4). In his reply brief, though, he altered his argument to argue that Officer Marchant lacked probable cause to arrest him for any offense. (Docket #46 at 4–6). He also raised, for the first time, an argument that his arrest was unreasonable. (Docket #46 at 6–8). Aside from the fact that these shifts prevented Officer Marchant from adequately responding, rendering summary judgment on the later-posited arguments improper, *see Cloe v. City of Indianapolis*, 712 F.3d 1171, 1182 (7th Cir. 2013), the large amounts of factual disputes also render summary judgment inappropriate.

Mr. Breitrick may have identified Mr. Haze by name. (*See* Docket #38 ¶ 8 (stating that "Mr. Breitrick told me he had seen Mr. Haze in the area trying to sell tickets to people going into State Fair.")). If that is the case, did Officer Marchant simply remember Mr. Haze's name from the previous year, making her able to pick him out from the crowd? That may be the case (*see* Docket #38 ¶ 12), but it is left unclear. Alternatively, did Mr. Breitrick point Mr. Haze out to Officer Marchant or describe him physically? This would support a finding of probable cause, but again it is left unclear.

These factual disputes, alone, are enough to overcome summary judgment.[4]

### 3.2 Equal Protection Clause

Factual disputes also preclude summary judgment on Mr. Haze's contention that Officer Marchant violated his right to equal protection of the law.

Essentially, Mr. Haze is asserting a "class-of-one," claim, arguing that he has been singled out by Officer Marchant for harassment. "To state a so-called 'class-of-one' equal protection claim, [Mr. Haze] must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008); citing *Village of Willowbrook v. Olech*, 528

---

[4]The Court, however, also points out that Mr. Haze, in his reply brief and without any supporting evidence, alleges that Mr. Breitrick later testified that Mr. Haze was not selling tickets on the date in question. (Docket #46 at 4–5). If Mr. Haze can produce admissible evidence of this at trial, he could potentially undermine Officer Marchant's theory of probable cause. Additionally, the Court notes that Officer Marchant did not file a motion for summary judgment on this claim. Thus, even if her affidavit *did* support summary judgment, the Court would be reluctant to grant summary judgment in her favor.

U.S. 562, 564 (2000)). The Seventh Circuit has "held that class-of-one claims can be brought based on allegations of the irrational or malicious application of law enforcement powers." *Geinosky*, 675 F.3d at 747 (citing *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009)). "One element of a proper class-of-one claim is a wrongful act that necessarily involves treatment departing from some norm or common practice." *Geinosky*, 675 F.3d at 747 (citing *McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004)).

Mr. Haze certainly has not "demonstrate[d] why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71*, 778 F.3d at 601. To begin, he has not definitively established that Officer Marchant's actions were irrational or malicious. Officer Marchant has twice cited Mr. Haze for theft—once in 2012 and once in 2013—despite having no evidence to support such a citation. To be sure, Officer Marchant offers an explanation for this action: the police department's computer system lacked an entry corresponding to a ticket sale violation. But a jury may discredit her explanation, finding it to be an attempt to shore up her arrest of Mr. Haze, especially in light of the fact that she apparently issued a similarly-incorrect ticket to Mr. Haze the year before but failed to correct the computer system at that time. Nonetheless, while Mr. Haze *may* be able to show that Officer Marchant's actions were irrational, he certainly has not definitively done so at this point. Additionally, he has not proffered any evidence that other individuals were treated differently than him. Perhaps the West Allis Police Department has routinely cited individuals for incorrect violations with corresponding fine amounts; such a practice would not inspire confidence, but it *would* establish that Mr. Haze was not treated differently than others. In any event, Mr. Haze has not

offered any evidence on this issue (nor, for that matter, has Officer Marchant). Accordingly, summary judgment is inappropriate.

3.3     Qualified Immunity

The parties' briefing on the issue of qualified immunity is not adequate, so the Court will not decide the issue at this point.

To begin, the Court points out that Officer Marchant did not move for summary judgment on the issue of qualified immunity. In her response brief, she seems to seek a ruling in her favor on the issue, at least as it relates to the equal protection aspect of Mr. Haze's claims. (*See* Docket #35 at 7–9). The Court acknowledges that qualified immunity is "an immunity from suit rather than a mere defense to liability," and so, perhaps, the Court should look past Officer Marchant's failure to move for summary judgment on the issue. But, in any event, her brief, together with the two submitted by Mr. Haze, do not address the issue in enough detail for the Court to feel comfortable ruling.

In *Saucier v. Katz*, the Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. 194, 201 (2001)). "Public officials are immune from suit under 42 U.S.C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, --- U.S. ----, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 572 U.S. ----, 134 S.Ct. 2012, 2023 (2014)). And, for a right to be clearly established, the existing

precedent must have "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. ----, 131 S.Ct. 2074, 2083 (2011). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S.Ct. at 1774 (quoting *al-Kidd*, 131 S.Ct. at 2085).

Neither party has provided the Court with any discussion of whether Officer Marchant violated any clearly-established rights in either arresting Mr. Haze or issuing him an incorrect citation. Of course, as the Court has already discussed, there are significant factual issues that remain—the parties wholly disagree over whether Officer Marchant had probable cause to arrest Mr. Haze and over whether Officer Marchant's justification for issuing an incorrect citation should be accepted or rejected. But neither uses *Saucier*'s framework to argue for or against qualified immunity. Specifically, what they need to do is take the facts in the light most favorable to Mr. Haze and then argue that the facts, when construed in that fashion, either do or do not state a violation of a constitutional right that was clearly established at the time in question. *Saucier*, 533 U.S. at 201. Neither does so; and, without further clarification of the parties' respective positions on the topic, the Court will not rule.

4. CONCLUSION

For all of these reasons, the Court is obliged to deny Mr. Haze's motion for summary judgment in its entirety. Having reached that conclusion, it is time to get this case on a track for swift resolution. In order to do so, the Court will schedule a status conference for Tuesday, June 30, 2015, at 8:30 AM. At that time, the Court will provide the parties with a trial date.

Accordingly,

IT IS ORDERED that Mr. Haze's motion for summary judgment (Docket #32) be and the same is hereby DENIED, and the parties shall appear for a status conference on Tuesday, June 30, 2015, at 8:30 AM.

Dated at Milwaukee, Wisconsin, this 22nd day of June, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge